IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CASE NO. 5-11-bk-04952-RNO |
| GREGORY M. ADALIAN | : | |
| | : | CHAPTER 7 |
| Debtor | : | |
| | : | |
| ************************************ | : | ***************************************** |
| EMERSON M. F. JOU, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| GREGORY M. ADALIAN, | : | |
| | : | |
| Defendant | : | ADVERSARY NO. 5-11-ap-00480-RNO |

**OPINION**[1]

Presently pending before the Court is a Second Motion to Dismiss filed by the Debtor/Defendant, Gregory M. Adalian ("Adalian" or "Defendant"). The Motion seeks to dismiss the Amended Complaint filed by the Plaintiff, Emerson M. F. Jou ("Jou" or "Plaintiff"). For the reasons stated herein, the Motion to Dismiss is granted as to Counts I, III, and V; it is denied as to the remaining Counts.

## I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J).

## II. Facts and Procedural History

On July 14, 2011, Adalian filed a petition under Chapter 7 of the Bankruptcy Code. Several months later, on November 1, 2011, this Adversary Proceeding was commenced by Jou,

---

[1] Drafted with the assistance of Joseph C. Barsalona II, Esq., Law Clerk.

who has filed a Complaint seeking a determination of non-dischargeability of certain debts pursuant to 11 U.S.C. §§ 523(a)(2), (4) and (6)[2] as well as a denial of discharge under 11 U.S.C. §§ 727(a)(3), (4) and (5).

An Opinion on the previous Motion to Dismiss was filed on June 7, 2012, and is cited as *Jou v. Adalian (In re Adalian)*, 474 B.R. 150 (Bankr. M.D.Pa. 2012) ("Opinion"). The entirety of that Opinion, including facts and procedural history, is incorporated by reference into this Opinion. In that Opinion, I dismissed Counts I, III, and IV but denied dismissal of Counts II, V, and VI. Leave to amend the Complaint as to the dismissed Counts was granted in an Order issued on the same day as the Opinion. Plaintiff's Amended Complaint ("Amended Complaint") was filed twenty-one days later, on June 28, 2012, and the Defendant filed a Motion to Dismiss the Amended Complaint on July 19, 2012. The Defendant then filed a Brief in Support of Motion to Dismiss Counts I, III, and V of Plaintiff's Amended Complaint on August 8, 2012. Plaintiff responded with a Brief in Opposition to Motion to Dismiss filed on August 30, 2012. This matter is now ripe for decision.

## III. Discussion

### A. Standard to Decide a Motion to Dismiss Under F.R.B.P. 7012(b)

Federal Rule of Bankruptcy Procedure 7012(b) incorporates, and makes applicable to bankruptcy adversary proceedings, Rules 12(b)-(i) of the Federal Rules of Civil Procedure. Rule 12(b)(6) requires dismissal of a complaint which fails to state a claim upon which relief can be granted. The complaint must contain "a short and plain statement of the claim showing that the

[2] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

pleader is entitled to relief." Fed. R. Civ. P. 8(a). Factual allegations in the complaint should be treated as true and construed in the light most favorable to the non-moving party. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1410 (3d Cir. 1991).

The Supreme Court's language in both *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) inform our analysis at the motion-to-dismiss stage. The Court stated in *Twombly* that while detailed factual allegations are not needed in a complaint, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citation omitted). Two years later, the *Iqbal* Court included "facial plausibility" in this analysis:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (internal citations and quotations omitted).

**B. Pleading Requirements for Allegations of Fraud Under F.R.B.P. 7009**

Just as the original Complaint had allegations of fraud, so too does the Amended Complaint, and therefore, a recitation of the heightened pleading standards for fraud is appropriate.

Federal Rule of Civil Procedure 9(b), as incorporated in Federal Rule of Bankruptcy Procedure 7009, applies to a complaint where fraud is plead. Rule 9(b) requires the party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P.

9(b). The Third Circuit has explained that a complainant should accompany a pleading with " 'the first paragraph of any newspaper story'–that is, the 'who, what, when, where and how' of the events at issue." *In re Rockefeller Center Properties, Inc. Securities Litigation*, 311 F.3d 198, 217 (3d Cir. 2002) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1422 (3d Cir. 1997)).

As stated in the first Opinion, a heightened pleading standard for fraud allegations furthers important purposes: due notice to defendants, increased protection from possibly defamatory statements, and decreasing the number of frivolous suits. *In re Rockefeller Center*, 311 F.3d at 217. However, the specificity required can be met "through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.' " *Lum v. Bank of America*, 361 F.3d 217, 224 (3d Cir. 2004) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). Still, Rule 9(b) has its limits. The rule should be applied with some flexibility, but "courts should be 'sensitive' to the fact that application of the Rule prior to discovery 'may permit sophisticated defrauders to successfully conceal the details of their fraud.' " *Burlington*, 114 F.3d at 1418 (citing *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 284 (3d Cir. 1992)).

**C. Counts of Dischargeability Under § 523**

The Amended Complaint contains two claims under § 523(a) that were previously dismissed: (1) § 523(a)(2), nondischargeability for false pretenses, representation, or fraud; and, (2) § 523(a)(6), nondischargeability for willful and malicious injury. Adalian has argued that applicable statutes of limitation bar both of these claims under California law; the 1991 and 1992 promissory notes ("Notes") were executed in California. That state has a four year statute of

limitations to commence an action under a written contract and a three year limitation to commence an action for fraud. *See generally* Cal. Civ. Proc. Code §§ 337, 338 (West 2012). Despite state statutes of limitations to the contrary, when there exists concrete evidence of a debt, such as a promissory note, the plaintiff is not barred from bringing a non-dischargeability action under § 523 of the Code. *See, e.g., Richardson v. Hidy Honda, Inc.*, 221 B.R. 956, 960 (D.Wyo. 1998) (although state statute of limitations on embezzlement has expired, debt was evidenced by promissory note, and so plaintiff could proceed with § 523(a)(4) action); *Gill Distribution Centers, Inc. v. Banks (In re Banks)*, 225 B.R. 738, 746 (Bankr. C.D.Cal. 1998) (". . . public policy supports the position that the pre-petition expiration of the applicable state statute of limitations for the cause of action predicated on the § 523(a) theory of liability should not presumptively preclude the creditor from pursuing a dischargeability action on that ground in the bankruptcy case."); *CBR, Inc. v. Naff (In re Naff)*, No. 96–21436–SCS, 1997 WL 1088126, at *8 (Bankr. E.D.Va. 1997) (where statute of limitations on plaintiff's fraud claim had expired but underlying judgment creating the debt was based in contract and not in tort, the court held "so long as there exists, on the date the bankruptcy petition was filed, a legally enforceable claim, the time within which the creditor may seek a determination that the debt is non-dischargeable under one of the exceptions in § 523 of the Bankruptcy Code is governed by the Bankruptcy Rules and not by any non-bankruptcy statute of limitations.").

Here, the Notes were provided to the Court and their validity has not been challenged. I find that they evidence the existence of the debt, and thus, the nondischargeability actions relating to them are not time barred by the California statutes of limitations.

### 1. Count I, Dischargeability Under § 523(a)(2)

The first count of the Amended Complaint requests that Jou's claims against Adalian be found non-dischargeable pursuant to § 523(a)(2). Section 523(a)(2)(A) provides that a debt is non-dischargeable where it is:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A). Proving a § 523(a)(2)(A) exception to discharge requires a showing that: (1) the debtor made representations knowing they were false; (2) the debtor made the representations with the intent and purpose of deceiving the plaintiff; (3) that creditor justifiably relied on such false representations; and, (4) the creditor suffered a loss or damage as a proximate consequence of the representations having been made. *In re Giquinto*, 388 B.R. 152, 165 (Bankr. E.D.Pa. 2008); *In re Antonious*, 358 B.R. 172, 182 (Bankr. E.D. Pa. 2006). All four elements must be proven by a preponderance of the evidence, with the burden of proof on the creditor. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

A debtor’s false pretense or misrepresentation must be material and made with the intent to deceive the party to whom it was directed. *Field v. Mans*, 516 U.S. 59, 68 (1995). “[A] ‘false pretense’ is an ‘implied misrepresentation or conduct which creates and fosters a false impression, as distinguished from a ‘false representation’ which is an express misrepresentation.’ ” *Antonious*, 358 B.R. at 182 (quoting *In re Haining*, 119 B.R. 460, 463-464 (Bankr. D.Del. 1990). Collectively, it is any series of events that create a contrived and misleading understanding of a transaction, in which a creditor is wrongly induced to extend

money or property to the debtor. *Antonious*, 358 B.R. at 182. A false pretense is fostered willfully, knowingly, and by design; it is not the result of a mistake. *Antonious*, at 182. A bankruptcy court may look to the totality of the circumstances, including recklessness on behalf of the debtor, to infer a debtor's intent to deceive. *In re Hildreth*, No. 1:10-ap-00158 MDF, 2011 WL 1332036, at *6 (Bankr. M.D.Pa. 2011) (quoting *In re Miller*, 39 F.3d 301, 305 (11th Cir. 1994)).

The instant allegations of fraud are contained in paragraphs 22 through 94 of the Amended Complaint. They are separated into two contexts: (1) allegations of fraud in regard to the Notes; and, (2) fraud related to the settlement of the Hawaii litigation. I will analyze both in turn.

Jou claims he lent the money to Adalian because of the Defendant's statements that the funds would go directly to the obligations of SCV Development, a California limited partnership ("SCV Development"). It is alleged that Plaintiff is a limited partner and Defendant is the general partner of SCV Development. Specifically, Jou avers that Defendant contacted the Plaintiff's broker and project accountant to request money so as to "protect the assets of SCV Development". Am. Compl. ¶ 25. Jou also claims that Adalian "offered to pledge collateral in the form of irrevocable assignments" of real property and the Defendant's partnership interest. Am. Compl. ¶ 27. These pledges led to the signing of the 1991 Note. However, Jou claims that Defendant did not intend to use the loan funds as promised nor to transfer the interests as promised. Instead, Jou claims, the statements were made only to induce the Plaintiff into lending the proceeds. Plaintiff goes on to allege the exact same factual scenario in regards to the proceeds from the 1992 Note.

Construing the Amended Complaint in the light most favorable to the Plaintiff, these allegations are "merely consistent" with Adalian's liability for fraud and so they do not create a "reasonable inference" that an actual fraud occurred. *Iqbal*, 556 U.S. at 678. Although Jou claims that his broker and project accountant were contacted by Adalian, the manner of contact, whether written or oral, is not alleged. Furthermore, only blanket legal conclusions on the Defendant's intent have been provided without factual support: "Defendant did not intend to use the loan for the purpose that he had represented," "Defendant induced Plaintiff," "Defendant knew . . . that Defendant had diverted funds," etc. Am. Compl. ¶¶ 44, 45. These are strong allegations that need factual support; in their present form, the allegations are precisely the sort that the *Twombly* and *Iqbal* Courts sought to dismiss. Because only the possibility of a fraud is shown, and not a plausibility, the § 523(a)(2) count in regards to the Notes is dismissed.

Turning to the alleged fraud related to the Hawaii settlement, of the thirty-nine paragraphs devoted to this Count, only eight of them were not in the original Complaint; the remaining paragraphs are stated verbatim as they were in the originally dismissed count. These new eight paragraphs, however, still do not "nudge" the Plaintiff's claims "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680. Once again, Jou provides the Court only with blanket legal conclusions surrounding the purported fraud without pleading the requisite particularity. *See* Am. Compl. ¶ 67 (". . . Defendant did not intend to comply with the terms of the settlement."); Am. Compl. ¶ 71 ("The foregoing representations were made by Defendant with the intent of misleading Plaintiff into relying on them."). Hence, the § 523(a)(2) claim as it relates to the Hawaii litigation settlement is dismissed.

In sum, I find that the Amended Complaint fails to state a claim under § 523(a)(2) and the Motion to Dismiss is granted as to Count I.

**2. Count III, Dischargeability Under § 523(a)(6)**

Plaintiff was also granted leave to amend his Complaint in regards to the § 523(a)(6) claim. Under § 523(a)(6), a debtor is not discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity . . .". Once again, the creditor has the burden of proving this claim by a preponderance of the evidence. *Grogan*, 498 U.S. at 291.

For purposes of § 523(a)(6), the debtor must perpetrate a "deliberate and intentional injury" upon the plaintiff to satisfy the "willful and malicious" element. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). A claim is not sufficient, then, if the creditor proves merely that there was an "intentional act that leads to injury". *Kawaauhau v. Geiger*, 523 U.S. at 61. In this Circuit, "[a]n injury is willful and malicious under the Code *only if* the actor purposefully inflicted the injury or acted with substantial certainty that injury would result." *Conte v. Gautam*, 33 F.3d 303, 305 (3d Cir. 1994) (emphasis added). Furthermore, injury can be established by indirect evidence of the debtor's knowledge of both the creditor's rights and that the conduct will cause particularized harm. *In re Glenn*, 470 B.R. 731, 736 (Bankr. M.D.Pa. 2012) (quoting *In re Paul*, 266 B.R. 686, 696 (Bankr. N.D.Ill. 2001)). Finally, a subjective standard must be used when analyzing the debtor's intent to cause a willful and malicious injury: "[t]he debt will only be excepted from the discharge . . . if the debtor had 'actual knowledge' that harm to the creditor was substantially certain to occur." *Glenn*, 470 B.R, at 736.

The Amended Complaint's allegations under § 523(a)(6) are found in paragraphs 109 through 147. Jou claims that Adalian's use of the Note funds was a tortious conversion perpetrated to cause a malicious injury on Jou. *See* Am. Compl. ¶¶ 111-114. As in the original Complaint, Jou points to the transfers Adalian made of his own property as the cause of the alleged "willful and malicious injury." Am. Compl. ¶¶ 120-122, 126-130. Added to the Amended Complaint are allegations that Adalian knew that spending the Note funds, for purposes other than those promised in the Notes, would injure Jou. *See, e.g.*, Am. Compl. ¶ 114 ("Defendant knew that . . . diverting the loan proceeds to other uses . . . was an intentional harm without cause or excuse."); Am. Compl. ¶ 122 ("Defendant knew that the wrongful conveyance of the property to a third party would cause harm to the Plaintiff . . . ."). In addition, the Amended Complaint contains statements pertaining to the Defendant's alleged intent to harm Jou during the Hawaii settlement obligations. Am. Compl. ¶ 136 ("Defendant knew the Plaintiff had rights under the settlement agreement and knew that his actions would cause harm to Plaintiff."); Am. Compl. ¶ 139 ("The Defendant filed multiple bankruptcy filings to avoid the District Court from ruling on the contempt.").

Consistent with my earlier Opinion, I hold that these claims are not sufficient to allege a § 523(a)(6) willful and malicious injury. In addition to the original reasons for dismissing Count III in the Opinion, there are three new bases for why this Count should be dismissed. First, the alleged willful and malicious actions by Defendant alleged by Plaintiff occurred *after* the debt was in existence. The transfer of funds, the misuse of proceeds, and the payments compelled by the U.S. District Court are all actions by Defendant perpetrated years after the debt accrued. The debt itself, originating from the Notes, is not the result of a "willful and malicious injury" but of

arms-length negotiations. Plaintiff is not pleading that Adalian intentionally injured him and the Notes were signed as a way to repay that injury; instead, Plaintiff pleads that the actions taken after the Notes were signed caused the injury. This is a misreading of the statute by the Plaintiff. The injury must give rise to the debt, not vice versa. Since the debt was incurred prior to the alleged injurious actions by the Defendant, it is not rendered non-dischargeable under § 523(a)(6).

Second, despite Plaintiff's arguments to the contrary, the instant case is distinguishable from *In re Dulgerian*, 388 B.R. 142 (Bankr. E.D.Pa. 2008) in that the Plaintiff has not provided adequate facts needed to survive a motion to dismiss. Plaintiff's Brief in Opposition to Motion to Dismiss Amended Complaint argues that the facts are similar between the two cases, and thus, the instant § 523(a)(6) claim passes muster. I read *Dulgerian* differently. In that case, the complainant provided the court with ample evidence of willful and malicious actions by the debtor/defendant to fraudulently induce the creditor/plaintiff into loaning money. *Dulgerian*, 388 B.R. at 151. That evidence included the existence of a false agreement of sale, proof that the debtor lied about his ownership interest in a lot of real property, proof that debtor/defendant was insolvent at the time of the transfer, etc. *Dulgerian*, 388 B.R. at 145. There, the alleged scheme by the debtor/defendant was conceivable and so the complaint proceeded to trial.

In contrast, the Plaintiff here does not plead adequate facts that would allow me to make a "reasonable inference" that such a scheme existed. *Iqbal*, 556 U.S. at 678. Jou does not plead that Adalian fraudulently induced him into lending the money, only that the money was used for purposes not connected to the Notes. Neither does Jou plead that the SCV Development venture, the focus of the payments, was created as a method to fraudulently induce the Plaintiff to lend

the money. Instead, the Plaintiff is attempting to convince the Court that the Notes themselves were fraudulent when the partnership existed and all of the assets associated with the Notes existed as well. Since it is not plausible that Adalian signed these Notes with the willful intent to harm Plaintiff, this Count will be dismissed.

Finally, I reiterate the authority of *In re Picard*, 339 B.R. 542 (Bankr. D.Conn. 2006) to support my holding that the conversion of a debtor's own property cannot be construed as a tortious conversion of another's property for purposes of § 523(a)(6), which the Plaintiff challenges in his Brief in Opposition to Dismiss Amended Complaint. *See* Pl.'s Br. in Opp'n to Dismiss Am. Compl. ¶¶ 10-11. In the Amended Complaint, Plaintiff refers to the Defendant's transfers of funds out of his own account (Am. Compl. ¶¶ 126-127) and Defendant's sale of his stock in Hessgen CDA (Am. Compl. ¶¶ 140-147) as intentional acts to injure Jou. These actions, with his own property, were well within the Defendant's property rights. These assets cannot plausibly be viewed as being deemed "the property of another entity" under § 523(a)(6), and thus, I find such actions do not constitute a "willful and malicious injury."

In sum, I find that the Amended Complaint fails to state a claim under § 523(a)(6) and the Motion to Dismiss is granted as to Count III.

**D. Counts Objecting to Discharge Under § 727**

The Complaint's fifth count alleges that the Debtor's discharge should be denied under § 727(a)(4)(C), which states:

> (a) The court shall grant the debtor a discharge, unless--
> (4) the debtor knowingly and fraudulently, in or in connection with the case--
> (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money,

> property, or advantage, for acting or
> forbearing to act; or . . .

In my original Opinion, I found that the Complaint failed to state claim on which relief can be granted for the Plaintiff's § 727(a)(4)(C) claims. *Adalian*, 474 B.R. at 166. The Amended Complaint's averments in regards to § 727(a)(4)(C) is copied verbatim from the original Complaint. *See* Am. Compl. ¶¶ 201-211. In light of my previous ruling, and Plaintiff's statement during the hearing on September 12, 2012, in which Plaintiff's counsel indicated that any § 727(a)(4)(C) claim was in error, Count V of the Amended Complaint is denied as to the § 727(a)(4)(C) claims. The allegations under § 727(a)(4)(A) remain.

## IV. Conclusion

Consistent with the reasoning given above, the Motion to Dismiss is granted as to Counts I, III, and V as to § 727(a)(4)(C). The Counts that survived the original Motion to Dismiss, Counts II, IV, and VI, remain. I will allow the Defendant twenty-one days to file an answer those Counts of the Amended Complaint. An Order will be entered consistent with the foregoing Opinion.

By the Court,

Robert N. Opel, II, Bankruptcy Judge
(BI)

Date: November 5, 2012