**IN RE:**

GREGORY M. ADALIAN

|  | Chapter | 7 |

Debtor | Case Number: 5-11-bk-04952 RNO

EMERSON M.F. JOU

Plaintiff | Adversary Number: 5-11-ap-00480 RNO

v.

GREGORY M. ADALIAN

Defendant

# OPINION

Pending before the Court is the Plaintiff's Motion for Partial Summary Judgment Regarding Counts IV, V, and VI of the Amended Complaint ("Summary Judgment Motion"). Each count seeks to deny the Debtor/Defendant a Chapter 7 discharge pursuant to a particular subsection of 11 U.S.C. § 727 of the Bankruptcy Code. For the reasons stated hereafter, I will grant the Summary Judgment Motion regarding Counts IV and VI. The Summary Judgment Motion on Count V will be denied.

## I.     Jurisdiction

The Court has jurisdiction of the matters complained of herein pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and (2). The matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J).

## II.     Facts and Procedural History

This is the third dispositive motion I have considered in the within Adversary Proceeding. In the early 1990s, the Plaintiff, Emerson M.F. Jou ("Jou"), made loans to the Debtor/Defendant, Gregory M. Adalian ("Adalian"). Adalian filed a Chapter 7 bankruptcy in this Court on July 14, 2011. Jou filed a timely Complaint which sought a determination of the

dischargeability of his claim against Adalian.  More to the point, the Complaint also objected to

Adalian's Chapter 7 discharge.

I previously wrote opinions on two different motions to dismiss in this Adversary

Proceeding.  A more detailed procedural history may be obtained by referring to those Opinions.

The Opinions are: *Jou v. Adalian (In re Adalian)*, 474 B.R. 150 (Bankr. M.D. Pa. 2012) and *Jou*

*v. Adalian (In re: Adalian)*, 481 B.R. 290 (Bankr. M.D. Pa. 2012).

Today, I consider Jou's Summary Judgment Motion.  Jou seeks summary judgment

regarding Counts IV, V, and VI of his Amended Complaint.  Each of the subject counts objects

to Adalian's Chapter 7 discharge.  Count IV is based upon 11 U.S.C. § 727(a)(3)[1], Count V is

based upon § 727(a)(4)(A), and Count VI is based upon § 727(a)(5).

Jou supported his Summary Judgment Motion by way of a Plaintiff's Statement of

Material Facts.  Jou has also submitted the Brief of Plaintiff, Emerson M.F. Jou in Support of

Motion for Partial Summary Judgment, as well as numerous exhibits which reflect matters

obtained through the discovery process.  Adalian opposes the Summary Judgment Motion and

has filed the Debtor/Defendant's Counter-Statement of Material Facts, as well as Defendant's

Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment.  Attached to Adalian's

Counter-Statement of Material Facts is a copy of the transcript of a July 16, 2013, videotaped

deposition of Jou.  The Summary Judgment Motion is thus ripe for decision.

---

[1]        Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. §
101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No.
109-8, 119 Stat. 37 ("BAPCPA").

## III.    Discussion

### A.    Summary Judgment Standard

Federal Rule of Bankruptcy Procedure 7056 makes Federal Rule of Civil Procedure 56 applicable to bankruptcy adversary proceedings.  Pursuant to Rule 56, the Court shall grant summary judgment to the moving party "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Therefore, the movant has the burden to prove the absence of genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986); *Madera v. Ameriquest Mortg. Co. (In re Madera)*, 363 B.R. 718, 724 (Bankr. E.D. Pa. 2007); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (U.S. 1986).  A material fact is a fact that might affect the outcome of the suit under the governing law.  An issue is genuine when there is sufficient evidence supporting the claimed factual dispute so as to require a judge or jury to resolve the parties' differing versions of the truth at trial.  *Official Comm. Of Unsecured Creditors v. Baldwin (In re Lemington Home for Aged)*, 659 F.3d 282, 290 (3d Cir. 2011).  In evaluating the evidence, the Court must view the facts in the light most favorable to the non-moving party and draw all inferences in favor of that party.  *Shull v. PNC Bank (In re Shull)*, 493 B.R. 453, 455 (Bankr. M.D. Pa. 2013) (internal citations omitted).

When deciding a motion for summary judgment, a court may consider matters in the record, including pleadings, depositions, answers to interrogatories, admissions, and any affidavits.  Fed. R. Bankr. P. 7056(c); *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 276 (3d Cir. 2001) (in deciding a summary judgment motion, the record should be reviewed as a whole picture).

3

Pursuant to Federal Rule of Evidence 201, I take judicial notice of the documents on the docket for this Adversary Proceeding, as well as the documents on the docket in Adalian's underlying Chapter 7 bankruptcy. *Abbatiello v. Nat'l Collegiate Trust (In re Abbatiello)*, 484 B.R. 655, 658 (Bankr. M.D. Pa. 2013); *Steinman v. Spencer (In re Argus Group 1700, Inc.)*, 206 B.R. 737, 757 n.8 (Bankr. E.D. Pa. 1996).

It is important to remember that "the court's role in deciding a motion for summary judgment is not to weigh evidence, but rather to determine whether the evidence presented points to a disagreement that must be decided at trial, or whether the undisputed facts are so one sided that one party must prevail as a matter of law." *DeShazo v. Heffernan (In re DeShazo)*, 354 B.R. 720, 722 (Bankr. E.D. Pa. 2006) (internal citations omitted).

Throughout my analysis, I will view the facts in the light most favorable to the non-moving party, Adalian. I also note that to sustain an objection to Chapter 7 discharge under § 727, the allegations must be proven by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287-88, 111 S.Ct. 654, 660 (1991); *United States Tr. v. Zimmerman (In re Zimmerman)*, 320 B.R. 800, 806 (Bankr. M.D. Pa. 2005); *Staiano v. Sheets (In re Sheets)*, 269 B.R. 339, 340 (Bankr. M.D. Pa. 2001).

Next, I will apply the summary judgment standard to the Counts of the Amended Complaint upon which Jou seeks summary judgment.

**B.      Count IV - Failure to Keep or Preserve Records Allegation**

Adalian filed his Chapter 7 bankruptcy on July 14, 2011. The case was commenced by only a petition and Exhibit D - Individual Debtor's Statement of Compliance with Credit Counseling Requirement. Adalian's schedules of assets and liabilities and the required

4

bankruptcy statements were first filed on September 13, 2011.

Jou seeks summary judgment on Count IV of the Amended Complaint and asserts that Adalian violated the requirements of § 727(a)(3) by failing to keep or preserve records "from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3).

It has been noted that: "the purpose of § 727(a)(3) is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs." *Fox v. Stumpf (In re Stumpf)*, No. 1:08-ap-00126 MDF, 2011 WL 503868, at *6 (Bankr. M.D. Pa. Feb. 10, 2011) (quoting *In re Scott*, 172 F.3d 959, 969 (7th Cir. 1999)).

To prevail on a claim under § 727(a)(3), a plaintiff, like Jou, must prove, by a preponderance, that the debtor failed to maintain and preserve adequate records and this failure makes it impossible to ascertain the debtor's financial condition and material business transactions. *Gray v. Jackson (In re Jackson)*, 453 B.R. 789, 796 (Bankr. E.D. Pa. 2011) (internal citations omitted). The Third Circuit Court of Appeals outlined the underpinnings of § 727(a)(3):

> The purpose of section 727(a)(3) is to give creditors and the bankruptcy court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge. *See* 4 Collier on Bankruptcy ¶ 727.-03[1] (15th ed. 1979). The statute also ensures that the trustee and creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history. Creditors are not required to risk having the debtor withhold or conceal assets under cover of a chaotic or incomplete set of books or records.

*Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992) (internal citations omitted).

5

Paragraph 90 of Jou's Statement of Material Facts ("Statement") reads: "at the 2004 Exam, Debtor [Adalian] testified that he had not filed a personal income tax return since the year 2000 including either federal or state tax returns." Pl.'s Statement of Material Facts ¶90. The transcript of the September 7, 2001, F.R.B.P. 2004 examination of Adalian was filed as an exhibit.

Adalian's Counter-Statement of Material Facts ("Counter-Statement") does not contain an individualized response to each paragraph in Jou's Statement. Rather, Adalian's Counter-Statement lumps together several paragraphs and makes a general reply.

Paragraph 91 of Jou's Statement reads: "the Debtor [Adalian] testified at the 2004 Exam that he was not in the process of filing the delinquent tax returns." Pl.'s Statement of Material Facts ¶91. Adalian's Counter-Statement includes the following: "86.-101. The Debtor [Adalian] made a good faith and reasonable effort to list outstanding tax claims and, upon filing his returns, amended the schedules to reflect the amounts owed to the various taxing authorities. It would make no sense to 'underreport' [sic] the Debtor's [Adalian's] liabilities." Def.'s Counter-Statement of Material Facts ¶86-101.

In viewing the facts in the light most favorable to Adalian, I find that when he filed for Chapter 7 relief, Adalian had not filed federal or state personal income tax returns for a ten-year period of time commencing in 2001.

A debtor's failure to timely file tax returns - especially for several years in a row - is a blatant example of a failure to maintain adequate records. *Pher. Partners v. Womble (In re Womble)*, 289 B.R. 836, 858 (Bankr. N.D. Tex. 2003) (citing *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 884-85 (6th Cir. B.A.P. 1999)). Additionally, my concern is that

6

where a debtor has not filed pre-petition tax returns, the trustee and every creditor is denied

potential access to a considerable amount of relevant financial and other information. For

example, how does a creditor test the debtor's statement in question number one of the Statement

of Financial Affairs regarding the debtor's gross income during the two years prior to bankruptcy

filing? Tax returns may also be utilized in attempting to prove or disprove the existence of a

business entity. Additionally, tax returns may be utilized in an effort to pierce a corporate veil.

A review of Adalian's schedules raises another issue concerning the retention of records,

specifically, certain corporate tax returns.

Schedule B - Personal Property states that Adalian is a 100% owner of International

Telephone Solutions, Inc. ("ITS") with his interest valued at $1.00. Schedule I - Current Income

of Individual Debtor state that, at the time of the petition, Adalian received $5,000.00 per month

from ITS where he served as President.

Adalian's income of $5,000.00 per month is reported on Schedule I, Line 7 - Regular

income from operation of business or profession or farm. Immediately after the word "farm,"

Line 7 provides: "(attach detailed statement)." A review of the docket shows that Adalian failed

to file any detail regarding the income or expenses of ITS.

To comply with § 727(a)(3), a debtor may be required to disclose the books and records

of a closely held corporation in which he holds an equity interest. The facts and circumstances

of each case should be analyzed to determine the extent of the debtor/shareholder's disclosure

obligation regarding the records of the corporation. *Blanchard v. Ross (In re Ross)*, No. 97-

19956DWS, 1999 WL 10019, at \*4 (Bankr. E.D. Pa. Jan. 4, 1999).

At the September 7, 2011, Rule 2004 examination, Adalian testified that ITS is a Nevada

corporation that generates telephone sales. He further testified that he received approximately $5,000.00 a month from the corporation as a "draw." He testified that the corporation was formed "early 2000s, mid 2000s" and that it has never filed a federal or state income tax return.

Transactions between a debtor and a related party often warrant heightened scrutiny. I find that Adalian has not adequately disclosed the amount or the sources of the income he received from ITS, of which he is the 100% owner. I agree with Bankruptcy Judge Frank's statement:

> When an individual debtor's income is derived in substantial part
> from a closely held corporation controlled by the debtor, the books
> and records of the corporation can be critical in evaluating the
> financial condition of the individual debtor– if for no other reason,
> because the debtor is in a position to commingle corporate and
> personal assets.

*Jackson*, 453 B.R. at 800. I conclude that, under the facts presented here, Adalian, without justification, failed to maintain adequate records for ITS as required by § 727(a)(3).

I return to the question of Adalian's personal income tax returns. The record here is less than crystal clear as to what personal income tax returns Adalian may now have actually been filed with the appropriate taxing authorities. Adalian's best argument is that he filed a number of tax returns post-petition. Jou counters that as of June 2013, Adalian had neither filed his 2011 individual tax return nor provided a copy of ITS's 2011 corporate tax return. Pl.'s Br. in Supp. of Mot. for Partial Summ. J. 4.

It has been held that a debtor's records must be kept in a manner which is contemporaneous to the events as they unfold. *Transworld, Inc. v. Volpe (In re Volpe)*, 317 B.R. 684, 690 (Bankr. D.S.C. 2003). Where a debtor does not timely make the disclosures required by § 727(a)(3), it increases the chance for prejudice to creditors. The bankruptcy process has

8

explicit deadlines to object to a debtor's discharge, or to file a complaint to determine the

dischargeability of a particular claim. Federal Rule of Bankruptcy Procedure 4004(a) requires

that an objection to a Chapter 7 discharge be filed within sixty days after the first date set for the

meeting of creditors under § 341(a). Federal Rule of Bankruptcy Procedure 4007(c) requires

that a complaint to determine dischargeability of a debt must be filed no later than sixty days

after the date first set for the meeting of creditors. Generally, a bankruptcy court may only

extend the time for the filing of a dischargeability complaint based upon a motion filed before

the expiration of the rule's time period. *Dalembert v. Pendergrass (In re Pendergrass)*, 376 B.R.

473, 476-77 (Bankr. E.D. Pa. 2007). These relatively short time frames increase the need for

**timely** required disclosures by a debtor.

In the circumstances presented by this particular case, I find that the record establishes

that Adalian continuously failed to discharge his responsibility to timely file his personal tax

returns and to see that corporate tax returns were timely filed for ITS. I find that any belated

filings are insufficient to satisfy the requirements of § 727(a)(3) regarding the keeping of

records. It should be noted that Jou supported his Summary Judgment Motion with copies of

federal and state tax returns for Adalian; which returns were obtained through the discovery

process. The returns range from 2001 through 2010. I note that the copied returns lack the

signature of the preparer or the taxpayer, Adalian. No copies of corporate returns, signed or

unsigned, for ITS are part of the record.

Once a creditor meets his initial burden of showing that the debtor's records are not

adequate to determine his true financial condition, the burden shifts to the debtor to provide an

adequate justification for the failure to keep or preserve adequate records. *Jackson*, 453 B.R. at

9

797. Justification is determined on a case-by-case basis and typically requires a showing that the debtor did what a reasonable person would do, regarding maintaining records, in similar circumstances. Further, a sophisticated debtor is held to a greater degree of accountability than an unsophisticated debtor. *K&K Company, Inc. v. Conde (In re Conde)*, 386 B.R. 577, 582 (Bankr. W.D. Pa. 2008). A cursory review of the schedules here suggests that Adalian is not an ordinary consumer who works for wages. Schedule I shows him to be an employee of ITS; Schedule B shows that he is the 100% owner of ITS. Schedule B also shows Adalian has a 20.31% interest in Media 5, LLC and 50% interest in SCV Development, Ltd. It is uncontested that Adalian has business and investment experience of more than twenty years. The loans, which are the genesis of Jou's claim, date back to 1991 and are related to SCV Development, Ltd., a California limited partnership. Adalian was the general partner, and Jou was a limited partner of the limited partnership. I conclude that Adalian is properly viewed as a relatively sophisticated debtor who has a commensurately higher duty of disclosure under § 727(a)(3).

I conclude that there is no genuine issue that for a period of some ten years prior to filing for Chapter 7 relief, Adalian failed to file his required federal and state income tax returns. Further, there is no genuine issue that since its inception, his related employer, ITS, has failed to file its required federal and state tax returns. No acceptable justification for the lack of these most fundamental, and legally required, records has been offered. Under all the attendant circumstances, I conclude that there is no genuine issue of fact outstanding and that Jou is entitled to summary judgment as a matter of law. I grant Jou's summary judgment on Count IV.

### C.    Count V - False Oath Allegation

A debtor may be denied a discharge where he makes a false oath in connection with his

bankruptcy case. 11 U.S.C. § 727(a)(4); *Strominger v. Giquinto (In re Giquinto)*, 388 B.R. 152, 177-78 (Bankr. E.D. Pa. 2008); *Baccala Realty, Inc. v. Fink (In re Fink)*, 351 B.R. 511, 524-25 (Bankr. N.D. Ill. 2006).

To prevail on his claim under § 727(a)(4)(A), Jou must prove several elements by a preponderance of the evidence: (1) Adalian made a false oath or statement; (2) Adalian knew the statement was false; (3) Adalian made the statement with the intent to deceive; and, (4) the statement was material to the bankruptcy case. *Giquinto*, 388 B.R. at 178; *JRC Lumber Corp. v. Corona (In re Corona)*, No. 08-15924(DHS), 2010 WL 1382122, at *7 (D.N.J. Apr. 5, 2010).

Exhibit M, filed by Jou in support of his Summary Judgment Motion, is a Notice of Federal Tax Lien filed against Adalian with the Prothonotary of Lackawanna County on July 5, 2001. The Notice includes an assessment of taxes for the years 2001, 2004, and 2006. The assessment totals $274,002.90. Adalian's initial schedules were filed on September 13, 2011, a little more than two months after the filing of the Notice of Federal Tax Lien. Schedule E - Creditors Holding Unsecured Priority Claims is where tax claims are routinely scheduled. Adalian's Schedule E, which he attested to under penalty of perjury, lists the Internal Revenue Service as having a disputed claim in the amount of $1.00. Schedule D - Creditors Holding Secured Claim does not list the Internal Revenue Service. Schedule E was amended on August 13, 2013, more than two years post-petition. The amendment, in part, schedules the Internal Revenue Service as holding a priority unsecured claim in the amount of $223,248.00.

Based upon this record, I conclude that Adalian made a false statement, concerning the federal tax claim, when he filed his original schedules.

As noted above, included in the remaining elements necessary to sustain an objection to

11

discharge is proof that the false statement was material to the bankruptcy case.

The subject matter of a false oath is material for these purposes if "it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings or the existence and disposition of the bankrupt's property." *In re Corona*, 2010 WL 138122, at *11.

Two decisions by my colleague, Judge France, aptly demonstrate satisfaction of the materiality requirement. In the first case, the debtor failed to schedule a gun safe and mobile home as assets. This failure was held to be material to the bankruptcy case under § 727(a)(4) and the debtor was denied a Chapter 7 discharge. *In re Stumpf*, 2011 WL 503868, at *9. In the second case, the debtor was found to have substantially undervalued significant assets in his schedules. The undervaluation was held to be material and the debtor was denied a Chapter 7 discharge. *In re Zimmerman*, 320 B.R. at 800.

I have already held that Adalian's pattern of not filing required federal and state tax returns violates the requirements of § 727(a)(3) regarding the keeping and preserving of records. However, in regards to his late scheduling of a claim in favor of the Internal Revenue Service, I find that this was not material to Adalian's bankruptcy case for the purposes of § 727(a)(4). I distinguish *Stumpf* and *Zimmerman* where the debtor either failed to schedule, or scheduled and significantly undervalued, substantial assets. I am loathe to deny a Chapter 7 discharge because a liability was not included in the original schedules.

This does not complete my review under § 727(a)(4). Jou also grounds his Summary Judgment Motion on other alleged false oaths by Adalian. For example, Jou points to the Statement of Financial Affairs, specifically the answer to question number ten concerning

12

transfers within two years before the July 14, 2011, petition. Jou also questions Adalian's valuation of his interest in ITS on Schedule B. As previously noted, he valued his interest at $1.00. I agree with the proposition that proof of substantial undervaluation of significant assets can form the basis for a finding of a § 727(a)(4) violation. However, I find this record to be insufficient to establish an actual valuation of Adalian's interest in the closely held corporation, ITS. Adalian's interest in ITS was disclosed on the schedules. Without proof of actual value, I am unable to find undervaluation.

I also distinguish the case of *Chusid v. First Union Nat. Bank*, No. Civ. A. 97-4134, 1998 WL 42292, at *8 (E.D. Pa. Jan. 21, 1998) ("Nothing can be more material to a bankruptcy case then [sic] a failure to disclose the existence of a current or recently held business because this would severely hamper the creditor's ability to investigate the debtor's financial status.") Here, Adalian at least disclosed the existence of ITS and his 100% ownership thereof.

Based upon the above, I will deny Jou's Summary Judgment Motion regarding Count V.

### D.    Count VI - Failure to Explain Loss of Assets Allegation

Jou has also moved for summary judgment on a third basis for objecting to Adalian's discharge, alleging a violation of § 727(a)(5). Under this subsection, a debtor may be denied a Chapter 7 discharge where he "has failed to explain satisfactorily, before a determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). A respected bankruptcy treatise notes: "section 727(a)(5) is broad enough to include any unexplained disappearance or shortage of assets." 5 Colliers on Bankruptcy ¶ 727.08, 727-44 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013).

13

Bankruptcy Judge Steckroth thus summarized the requirements of § 727(a)(5):

> Section 727(a)(5) provides that the court shall grant the debtor a discharge, unless the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph any loss of assets or deficiency of assets to meet the debtor's liabilities. This section, together with section 727(a)(3), imposes a duty upon the debtor to make full disclosure of his finances. Under section 727(a)(5), the plaintiff has the initial burden of introducing some evidence of the disappearance of substantial assets, the burden then shifts to the debtor to explain satisfactorily any losses or deficiencies.
>
> It is within the Court's sound discretion to determine whether the debtor's explanation is satisfactory. Simply put, a satisfactory explanation is one that convinces the bankruptcy judge. Although the explanation need not be far-reaching and comprehensive, it must consist of more than a vague, indefinite, and uncorroborated hodgepodge of financial transactions. A creditor is not required to rely on a debtor's mere statement that he no longer has certain assets. Importantly, a debtor is not permitted to defer an explanation until trial when the disposition of their assets has been placed in issue at summary judgment.

*Guildys v. Benkas (In re New Jersey Mobile Dental Practice, P.A.)*, No. 10-02067(DHS), 2012 WL 3018052, at *11 (Bankr. D.N.J. July 24, 2012) (internal citations omitted); *see also Watchen v. Kamara (In re Kamara)*, No. 10-55491, 2012 WL 5879718, at *4 (Bankr. D. Del. Nov. 20, 2012) (the debtor's explanation for loss of assets must be such that the court no longer wonders what happened to the assets).

Jou's Summary Judgment Motion first largely concerns the disposition of the proceeds from Adalian's sale of property known as 900 Lillibridge Street, Blakely, PA ("Blakely Property"). The June 9, 2010, HUD Settlement Statement shows that the contract price for the Blakely Property was $693,300.00. Adalian is a identified as the seller on the settlement statement. Line 603 of the Settlement Statement shows cash to Adalian in the amount of

14

$302,262.51.  I note that the sale of the Blakely Property occurred less than two years before the bankruptcy petition; it is therefore within the avoidance period for fraudulent transfers pursuant to § 548.  The cash to Adalian from the sale was after certain deductions.  For example, Line 504 of the Settlement Statement shows a deduction of $500,000.00 for a "payoff of a First Mortgage Loan Jeffery A. McDaniel" ("McDaniel").

In his Brief supporting the Summary Judgment Motion, Jou questions the basis for the payment to McDaniel.  Exhibit V, which accompanied the Summary Judgment Motion, appears to be a duly recorded mortgage from Adalian to McDaniel in the face amount of $500,000.00.  Viewing the facts in the light most favorable to Adalian, I cannot conclude that the payment to McDaniel establishes a § 727(a)(5) violation.

Secondly, Jou refers to two declarations Adalian gave under penalty of perjury in pre-petition litigation between Jou and Adalian.  When the petition was filed, there was a pending action in the United States District Court for the District of Hawaii, Case No. 1:09-cv-00226-JMS-KSC.  In that action, Jou sought a money judgment against Adalian ("Hawaii Litigation").  Jou's Statement at paragraph 72 states that the first declaration Adalian gave in the Hawaii Litigation was dated January 25, 2011, and contained a balance sheet showing Adalian's assets and liabilities.  Paragraph 73 of the Statement states that a second declaration was given on February 11, 2011, containing an amended balance sheet, given to correct a clerical error in the original balance sheet ("Hawaii Declaration").  Paragraph 74 of the Statement states that the amended balance sheet shows that Adalian had "Cash and Cash equivalents" of $167,733.00 as of December 31, 2010.  Paragraph 76 of the Statement states that the amended balance sheet shows that Adalian has a "Note Receivable" of $95,000.00 as of December 31, 2010.

15

Adalian's Chapter 7 petition was filed on July 14, 2011, less than seven months after the giving of the Hawaii Declaration. Schedule B lists cash on hand and two checking accounts with a total cash position of $848.00. Schedule B.16 shows Accounts Receivable of $0.00; the Schedule notes "Debtor had receivables from an entity that is now defunct."

How has Adalian explained the apparent loss of substantial assets during this seven months before the petition filing? His Counter-Statement includes the following:

> 77.-82. The balance sheet submitted in the Hawaii proceeding was prepared as a favor on an expedited basis by a friend, Doug McKinnon, and was not audited and was believed to be true and accurate at the time. Further, the "note receivable" mentioned, as stated, was determined to be worthless since the company ceased doing business.

Def.'s Counter-Statement of Material Facts ¶¶ 72-82.

Adalian's Brief in Opposition to the Motion for Summary Judgment suggests that Jou's references to the Hawaii Declaration are unavailing "since Jou never asked the Debtor [Adalian] to explain any losses or inaccuracies on the unaudited balance sheet." Def.'s Br. In Opp'n to Pl.'s Mot. for Partial Summ. J. 10.

I conclude that Jou has offered sufficient evidence to support the disappearance of substantial assets. At that point, the applicable law imposes an obligation on Adalian to satisfactorily explain those losses. *New Jersey Mobile Dental Practice*, 2012 WL 3018052, at *11. I also conclude that Adalian has failed to offer a satisfactory explanation for the loss of assets, which includes the apparent loss of cash in excess of $165,000.00, less than seven months before the bankruptcy filing.

I find that there is no outstanding genuine issue of material fact and will grant Jou's summary judgment regarding Count VI.

16

## IV.    Conclusion

I find that Adalian is not eligible for a Chapter 7 bankruptcy discharge.  An order will be entered consistent with the foregoing Opinion.  I also conclude that the grant of summary judgment to Jou on Counts IV and VI of the Amended Complaint moots the remaining pending counts in the Amended Complaint.  Those remaining counts sought a determination of the dischargeability of Jou's claim against Adalian which is mooted by my finding of Adalian's ineligibility for a Chapter 7 discharge of any of his obligations.  Consistent with this Opinion, I will also grant Jou relief from the automatic stay to proceed in the Hawaii Litigation, in accordance with applicable non-bankruptcy law.

By the Court,

Robert N. Opel II

_____

Date: November 5, 2013

Robert N. Opel, II, Bankruptcy Judge

(BI)

17